**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patagonia Area Resource Alliance, et al., | No. CV-23-00280-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Forest Service, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs' Amended Motion for Leave to File Second Amended Complaint for Declaratory and Injunctive Relief (Doc. 96) and Amended Motion to Supplement the Administrative Record and/or Admit Extra-Record Evidence, and Alternative Request for Limited Discovery (Doc. 100). The Motions are fully briefed. (*See* Docs. 105, 106, 107, 108, 111, 113.) For the reasons set forth more fully herein, the Court will grant the Motions.

## I.    <u>Factual & Procedural Background</u>

On June 20, 2023, Plaintiffs, eight environmental organizations, filed this action against Defendants the United States Forest Service and Kerwin Dewberry, Forest Supervisor of the Coronado National Forest (collectively, "USFS"), alleging that USFS's approval of two exploratory mineral drilling projects in the Patagonia Mountains of southeast Arizona's Coronado National Forest—Arizona Standard LLC's Sunnyside Project and South32 Hermosa Inc.'s Flux Canyon Project—violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332 *et seq.* (*See* Doc. 1.) Plaintiffs

asserted five claims challenging various aspects of USFS's environmental analysis in the Sunnyside Project's January 2023 Environmental Assessment ("EA") and June 16, 2023 Decision Notice/Finding of No Significant Impact ("DN/FONSI"), as well as the Flux Canyon Project's Decision Memorandum. (*See id.* ¶¶ 116–43.) On September 5, 2023, the Court denied Plaintiffs' Motion for Preliminary Injunction.[1] (Doc. 48.) On October 12, 2023, Plaintiffs filed their First Amended Complaint ("FAC"), raising three additional claims under the Endangered Species Act ("ESA") and adding the U.S. Fish and Wildlife Service ("FWS") as a Defendant (collectively with USFS, "Federal Defendants"). (Doc. 61.)

On January 9, 2024, the Court issued a Scheduling Order that set deadlines for Federal Defendants to provide the administrative records to Plaintiffs and the Court, motions objecting to the record or seeking to supplement the record, and summary judgment briefing. (Doc. 68.) On January 31, 2024, Federal Defendants provided a review copy of the administrative record to Plaintiffs. (Doc. 69 at 3.)[2] On March 13, 2024, Plaintiffs requested a six-week extension of the existing deadlines because Federal Defendants had not disclosed documents responsive to Plaintiffs' requests pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which sought documents related to the Hermosa Critical Minerals Project ("Hermosa CMP").[3] The Court granted two additional extensions while Plaintiffs received documents between April 9, 2024, and June 6, 2024. (Docs. 72, 76.)

After reviewing the preliminary administrative record and the partial responses to their FOIA requests, Plaintiffs conferred with Federal Defendants and asked them to

---

[1] Plaintiffs appealed, and on May 25, 2024, the United States Court of Appeals for the Ninth Circuit affirmed the denial with respect to the Sunnyside Project and, with respect to the Flux Canyon Project, dismissed the appeal as moot because drilling had been completed. (Doc. 79-1.) The Ninth Circuit's memorandum opinion may also be found at *Patagonia Area Res. All. v. U.S. Forest Serv.*, No. 23-16167, 2024 WL 2180192 (9th Cir. May 15, 2024).

[2] Record citations refer to the page numbers generated by the Court's CM/ECF filing system.

[3] In July 2023, Plaintiff Patagonia Area Resource Alliance ("PARA") submitted a FOIA request to the U.S. Forest Service, Region 3. In October 2023, PARA submitted a FOIA request to the U.S. Forest Service Washington Office. (Doc. 69 at 3.) The Washington Office is yet to provide any documents. (Doc. 100 at 12.)

include additional documents in the administrative records. (Doc. 100 at 13–16.) Federal Defendants refused to include many of those documents and lodged the administrative records with the Court on July 12, 2024. (*Id.*; Doc. 80.) Thereafter, Plaintiffs filed a Motion for Leave to file Second Amended Complaint and a Motion to Supplement the Administrative Record. (Docs. 81, 85.)

On August 21, 2024, the Court granted Federal Defendants' unopposed request to stay deadlines in the case while USFS prepared a Supplemental Information Report ("SIR") considering whether new information about Hermosa CMP required a supplemental NEPA document. (Docs. 91, 92.) In their request for a stay, Federal Defendants stated:

> Granting this stay will preserve the Court and the parties' resources, as well as simplify next steps in the case. If at the end of the process Plaintiffs are dissatisfied with the outcome, Federal Defendants will then consent to Plaintiffs amending their Complaint to challenge the Forest Service's SIR or supplemental NEPA document. Federal Defendants will also provide amended records to the parties and the Court that include the materials the Forest Service is considering in the SIR—many of which are the subject of Plaintiffs' pending record motion—streamlining the dispute about the contents of the administrative records.

(Doc. 91 at 2.) Plaintiffs submitted a letter and exhibits to USFS to inform its analysis as it prepared the SIR. (Doc. 100-1 at 9, 151–61.)

On October 31, 2024, USFS lodged an amended administrative record with the Court that included the SIR and "all additional material reviewed in the creation of the SIR." (Doc. 93; Doc. 93-1 ¶ 2.) The SIR concluded no supplemental NEPA analysis was necessary, and the amended administrative record did not include any of the documents Plaintiffs had sent to USFS or requested USFS add to the administrative record. (USFS 031151–65; Doc. 100 at 17–18.) On December 20, 2024, Plaintiffs filed the instant Amended Motion for Leave to File Second Amended Complaint and Amended Motion to Supplement the Administrative Record. (Docs. 96, 100.)

## II.    Amended Motion for Leave to File Second Amended Complaint

Pursuant to LRCiv 15.1 and Federal Rule of Civil Procedure 15(a)(2), Plaintiffs seek leave to file a Second Amended Complaint ("SAC"). (Doc. 96 at 2.) Plaintiffs' proposed

amendments would: (1) omit allegations relating to the Flux Canyon Project, which has been completed; (2) revise Plaintiffs' claims in response to recent developments, including by incorporating new factual information and addressing Federal Defendants' October 2024 SIR; and (3) add a claim seeking supplemental environmental analysis. (*Id.*; Doc. 111 at 2.) Defendant-Intervenor Arizona Standard[4] opposes only the addition of the claim seeking supplemental environmental analysis. (Doc. 107 at 1.)

Under Rule 15(a)(2), the "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he purpose of the rule is 'to facilitate decision on the merits, rather than on pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). District courts must apply this policy "with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990). In deciding whether to grant leave to amend, a district court should consider the following factors: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; and (5) futility of the amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment is futile "only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

Arizona Standard argues Plaintiffs' proposed Fourth Claim for Relief under § 706(1) of the Administrative Procedure Act ("APA"), (Doc. 96-1 at 82–85), is futile[5] because it challenges a final agency action, rather than an agency's failure to act, and does not request appropriate relief. (Doc. 107 at 5.) Arizona Standard's arguments are unpersuasive.

---

[4]    Neither Federal Defendants, nor Defendant-Intervenor South32 Hermosa Inc. ("South32"), oppose Plaintiffs' proposed amendments.
[5] Arizona Standard does not challenge the proposed amendment on any other ground, and the Court finds that no other *Foman* factor weighs against granting leave to amend.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A. Plaintiffs' Supplemental NEPA Claim Properly Challenges USFS's Failure to Act Under § 706(1)**

The APA "permits a court to 'compel agency action unlawfully withheld or unreasonably delayed [under § 706(1)],' or to 'hold unlawful and set aside agency action, findings and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [under § 706(2)].'" *Ctr. for Biological Diversity v. Cal. Dep't of Transp.* (*CBD v. CDOT*), No. 12-CV-02172-JSW, 2013 WL 6698740, at *5 (N.D. Cal. Dec. 19, 2013) (quoting 5 U.S.C. §§ 706(1)–(2)(A)).

Arizona Standard argues Plaintiffs cannot assert both a § 706(1) claim and a § 706(2) claim that challenge the "USFS's ultimate approval of the Sunnyside Project."[6] (*Id.* at 6–7.) However, as Plaintiffs explain, their § 706(2) claim and proposed § 706(1) claim do not challenge the same event or conduct. (Doc. 111 at 3–5.) While the topic of the allegedly defective environmental analysis is the same in each claim, i.e., the cumulative impacts of the Sunnyside Project, the agency action, or inaction, targeted by each claim is distinct. The § 706(2) claim challenges the environmental analysis in the Sunnyside EA and DN/FONSI issued on June 16, 2023, specifically alleging that the analysis of the Sunnyside Project's cumulative impacts was arbitrary and capricious. (*Id.* at 4; Doc. 96-1 ¶¶ 124–28.) "Final NEPA documents constitute 'final agency action' under the APA, whether they take the form of an [Environmental Impact Statement ("EIS")] and Record of Decision or an EA and FONSI, because they culminate the agencies' environmental review process." *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 868 (9th Cir. 2022). Thus, Plaintiffs' claim challenging the EA's cumulative impacts analysis is a challenge to set aside final agency action arising under § 706(2).

In contrast, the proposed § 706(1) claim "challenges USFS's failure to supplement its NEPA analysis after issuance of the Sunnyside EA and DN/FONSI, . . . that continued at least until USFS approved the Sunnyside plan of operations on September 7, 2023." (Doc. 111 at 4; Doc. 96-1 ¶¶ 130–33.) "[A] claim under § 706(1) can proceed only where

---

[6]  In their Opposition to Plaintiffs' Motion to Supplement the Administrative Record, Federal Defendants also argue Plaintiffs' supplemental NEPA claim arises under § 706(2) rather than § 706(1). The Court addresses all arguments on this issue in this Section.

a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

### 1. USFS's Supplemental NEPA Duty Required the Agency to Take Discrete Action

An agency has a duty to prepare a supplemental NEPA analysis, either an EA or EIS, where: (1) there remains major federal action to occur; and (2) new information is sufficient to show that the remaining action will affect the quality of the human environment in a significant manner or to a significant extent not already considered. *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 373–74 (1989).

#### a. *Major Federal Action Remaining to Occur*

Supplemental NEPA analysis "is necessary only if there remains major federal action to occur." *Norton*, 542 U.S. at 73 (quoting *Marsh*, 490 U.S. at 374). Major federal action remains to occur where an agency has prepared an environmental assessment of a mining project's impact but has not yet approved the mining project's plan of operations. *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1088, 1095 (9th Cir. 2013); *see also Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir. 2018) (holding that major federal action was complete upon approval of mining plan of operations); 36 C.F.R. § 228.4(a)(4) ("[A]ny operation . . . causing or [that] will likely cause significant disturbance of surface resources . . . can not be conducted until a plan of operations is approved."). Plaintiffs allege that major federal action remained to occur until approval of the Sunnyside Project plan of operations on September 7, 2023. (Doc. 96-1 ¶¶ 130–31; Doc. 100 at 27–28.) The DN/FONSI itself recognizes that it "does not constitute final approval of the Plan of Operations," and that following its issuance, "Arizona Standard must revise the Plan of Operations as necessary to conform to the requirements of this [DN]." (Doc. 27-1 at 3.) Arizona Standard acknowledges that USFS issued the DN/FONSI on June 16, 2023, and the final approval of the Sunnyside Project plan of operations on September 7, 2023. (Doc. 107 at 2.) Thus, Plaintiffs have properly alleged that major

1   federal action remained to occur until September 7, 2023.[7]

2                      b.  *Significant New Circumstances or Information*

3          "NEPA requires agencies to prepare a supplemental EA when 'there are significant

4   new circumstances or information relevant to environmental concerns and bearing on the

5   proposed action or its impacts.'" *Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054,

6   1069 (9th Cir. 2023) (citing 40 C.F.R. § 1502.9(d)(1)(ii) (2020)). An agency is not required

7   to supplement its EA if it has taken a hard look at the new circumstances and determined

8   the impact will not be significantly different from those it already considered. *Id.* at 1069

9   (citing *Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1107 (9th Cir. 2016)).

10  Therefore, at minimum, an agency has a non-discretionary duty "to evaluate the

11  significance of new information or circumstances" and decide whether to engage in

12  supplemental analysis. *See id.*; *Norton*, 542 U.S. at 72–73 (citing *Marsh*, 490 U.S. at 375).

13  Because the question of whether the new information is "significant" is "a factual dispute

14  the resolution of which implicates substantial agency expertise," courts can compel the

15  agency only to take a hard look at the new information's significance, not to prepare a

16  supplemental NEPA document. *Marsh*, 490 U.S. at 376–77; *see also Friends of the*

17  *Clearwater v. Dombeck*, 222 F.3d 552, 558 (9th Cir. 2000) ("When new information comes

18  to light the agency must consider it, evaluate it, and make a reasoned determination whether

19  it is of such significance as to require [an SEIS].") (quoting *Warm Springs Dam Task Force*

20  *v. Gribble*, 621 F.2d 1017, 1024 (9th Cir. 1980)).

21         Plaintiffs allege that USFS received significant new information regarding the

22  cumulative effects of Hermosa CMP after issuing the EA and DN/FONSI but "failed to

23  supplement its EA analysis." (Doc. 96-1 ¶ 131.) According to Plaintiffs, Federal

---

24  [7] Federal Defendants also appear to argue no major federal action remained to occur
25  because the DN/FONSI constituted final agency action that consummated the agency's
    decisionmaking process and created rights and obligations or legal consequences. (Doc.
26  105 at 21 (citing *Bennett v. Spear*, 520 U.S. 155, 178 (1997)).) However, whether the
    DN/FONSI constitutes "final agency action" subject to review under § 706(2) of the APA,
27  which as discussed above it does, is a separate question from whether major federal action
    remains to occur giving rise to a § 706(1) failure to act claim. *See Norton*, 542 U.S. at 61–
28  63, 73. The APA does not prevent a plaintiff from challenging both a NEPA document and
    an agency's failure to supplement that NEPA document.

Defendants not only failed to prepare a supplemental EA, but also failed to evaluate the significance of the new information whatsoever. (*Id.*) Consequently, Plaintiffs have sufficiently alleged that USFS failed to take a discrete action the agency was required to take.

In sum, Plaintiffs properly allege USFS's failure to supplement constituted agency action unlawfully withheld, giving rise to a failure to act claim under § 706(1). (Doc. 111 at 3 (citing *Dombeck*, 222 F.3d at 560 ("An action to compel an agency to prepare an [Supplemental Environmental Impact Statement ("SEIS")] . . . is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1) to compel agency action unlawfully withheld or unreasonably delayed.") (internal quotation marks omitted)).)

       2.  <u>That Courts Review an Agency's Decision not to Supplement Under the Arbitrary and Capricious Standard of Review Does not Convert Plaintiffs' Failure to Act Claim into a Claim to Set Aside Agency Action Under § 706(2)</u>

Arizona Standard relies on cases which state, "[a]n agency's decision not to supplement its NEPA analysis is set aside if it was arbitrary and capricious," to conclude that supplemental NEPA claims can arise only under § 706(2). *Earth Island Inst.*, 87 F.4th at 1069 (citing *Marsh*, 490 U.S. at 376); (*see* Doc. 107 at 6). Arizona Standard is incorrect. This conclusion (1) contradicts the rule explicitly set out in *Dombeck* and the multitude of cases analyzing supplemental NEPA claims as arising under § 706(1); (2) ignores that an agency's supplemental NEPA duty meets *Norton*'s requirements for § 706(1) claims; and (3) is not supported by the authority Arizona Standard cites.

First, controlling precedent has repeatedly analyzed or described claims challenging an agency's failure to meet its NEPA duty to supplement an environmental analysis as arising under § 706(1). *See Dombeck*, 222 F.3d at 560; *Norton*, 542 U.S. at 61, 72–73 (stating that "[a]ll three claims at issue here involve assertions that BLM failed to take action," including plaintiff's supplemental NEPA claim, and analyzing the claims under § 706(1)); *Idaho Sporting Cong. Inc. v. Alexander*, 222 F.3d 562, 564–66 (9th Cir. 2000) (plaintiff filed action under § 706(1) contending "that the Forest Service must . . . prepare

supplemental EAs and EISs"); *Ctr. for Biological Diversity v. Salazar*, 706 F.3d at 1094–95 (holding that agency "did not 'unlawfully with[o]ld' required agency action under § 706(1) where plaintiffs sought to compel supplemental NEPA analysis). Many district courts within the Ninth Circuit, including this one, have done so as well. *See, e.g.*, *Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, No. CV 10-863-PHX-MHM, 2011 WL 905656, at *1–2 (D. Ariz. Mar. 15, 2011) (discussing plaintiff's supplemental NEPA claim as a "failure-to-act" claim); *Cottonwood Env't Law Ctr. v. U.S. Sheep Experiment Station*, No. CV 17-155-M, 2018 WL 2088291, at *2–3 (D. Mont. May 4, 2018) (denying plaintiffs' supplemental NEPA claim under § 706(1) because plaintiffs could not "satisfy their burden of establishing 'failure to act'" where the agency's duty to supplement had not yet been triggered by the issuance of a ROD), *aff'd*, 752 F. App'x 523 (9th Cir. 2019).

Second, in *Norton*, the Supreme Court discussed its holding in *Marsh* and explained that supplemental analysis is "a NEPA-required duty" and agencies must "take a 'hard look' at . . . new information to assess whether supplementation might be necessary," but only if major federal action remains to occur. 542 U.S. at 72–73. For the reasons discussed above, Plaintiffs' supplemental NEPA claim meets these requirements. *See* discussion *supra* Section II.A.1.

Third, the cases Arizona Standard and Federal Defendants rely on do not support their claim that supplemental NEPA claims arise only under § 706(2), but rather stand for the proposition that courts review an agency's decision not to supplement under the arbitrary and capricious standard.[8] In *Earth Island Institute* for example, the plaintiffs alleged the Forest Service failed to supplement its NEPA analysis of a logging project after

---

[8] Defendants assume that because the APA's arbitrary and capricious standard of review appears in the text of § 706(2) but not in § 706(1), anytime a court applies the APA's arbitrary and capricious standard of review to a plaintiff's claim, that claim must arise under § 706(2), rather than § 706(1). However, § 706(1) does not contain an independent standard of review for courts to apply to § 706(1) claims, and, as the subsequent discussion demonstrates, it follows that courts look to the arbitrary and capricious standard of review when determining whether to compel agency action unlawfully withheld under § 706(1). *Cf. W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011) (applying APA's arbitrary and capricious standard of review to plaintiff's ESA citizen-suit claim "[b]ecause [the] ESA contains no internal standard of review").

a beetle outbreak killed 220 acres of trees within the project's boundaries. 87 F.4th at 1069–70. "In response to the outbreak [and prior to filing of the lawsuit], the Service published an SIR" that concluded the area affected by the outbreak was too small to affect the overall marten population and thus, no supplemental EA or EIS was necessary. *Id.* The court stated that the agency's "decision not to supplement . . . [would be] set aside if it was arbitrary and capricious," and proceeded to analyze the SIR and the reasons the agency provided for its decision not to prepare a supplemental NEPA document. *Id.* The court never discussed whether plaintiffs' supplemental NEPA claim arose under § 706(1) or § 706(2). *See id.*

Similarly, in *Marsh*, the plaintiffs challenged an agency's failure to prepare a supplemental EIS in light of new information regarding a dam's adverse effects on downstream fishing and turbidity. 490 U.S. at 369–70. The court held that supplemental NEPA analysis is required in some circumstances and that the agency's "decision not to supplement" should not be set aside unless it was arbitrary and capricious. *Id.* at 375–77. Applying that standard, the court reviewed the agency's decision-making process, which included a formal SIR explaining the decision not to supplement, and concluded that the agency took the requisite hard look and "determined based on careful scientific analysis that the new information was of exaggerated importance, . . . [and] in concluding that supplementation was unnecessary . . . the [agency] reached a decision that, although perhaps disputable, was not 'arbitrary or capricious.'" *Id.* at 378–85. Again, the court did not address whether the plaintiffs' supplemental NEPA claim arose under § 706(1) or § 706(2).

In both *Earth Island Institute* and *Marsh*, the holding is not that supplemental NEPA claims arise only under § 706(2). Rather, the holding is that, whether the plaintiff chooses to proceed under § 706(1) or § 706(2),[9] the court reviews the agency's decision not to

---

[9]  The Northern District of California has described supplemental NEPA claims arising under § 706(1) and § 706(2), where the agency has prepared a written determination, as interchangeable. "When the agency has prepared a written determination that a court can review, the distinction between Sections 706(1) and 706(2) makes little difference. Either the determination itself is a final agency action reviewable under Section 706(2)(A), or else the court reviews the written determination to determine whether the agency has unlawfully

supplement under the arbitrary and capricious standard, "carefully reviewing the record" to ensure "the agency has made a reasoned decision based on its evaluation of the significance—or lack of significance—of the new information." *Marsh*, 490 U.S. at 375–78; *see also Earth Island Inst.*, 87 F.4th at 1069. Clearly, if the agency took no action after receiving new information and did not evaluate the information's significance, the agency would have failed to take the requisite hard look. In such a case, the court would then compel the agency action unlawfully withheld, i.e., the evaluation of the new information and determination of its significance. For example, in *Dombeck*, the court held "that the Forest Service's *failure to evaluate in a timely manner the need to supplement* the original EIS in light of . . . new information violated NEPA." 222 F.3d at 559 (emphasis added). The court explicitly stated that the plaintiff's "action to compel an agency to prepare an SEIS . . . [was] an action arising under 5 U.S.C. § 706(1)." *Id.* at 560. There, the agency "sent the plaintiffs letters refusing to prepare an SEIS" before the onset of the action and did not "perform the required analysis [of the significance of new information until] after litigation began." *Id.* at 560.

Here, as in *Dombeck*, USFS did not prepare a written determination explaining its decision not to prepare a supplemental EA until after litigation began. Plaintiffs allege that USFS failed to consider significant new information regarding Hermosa CMP prior to approving the plan of operations. (Doc. 96-1 ¶ 131.) And although both Arizona Standard and Federal Defendants appear to assume that USFS made a decision not to supplement, (Doc. 105 at 12; Doc. 107 at 6), Arizona Standard does not allege, or point to any evidence suggesting, that prior to the September 7, 2023 approval of the Sunnyside Project plan of operations, USFS considered information regarding Hermosa CMP, addressed its significance, and made a decision not to supplement the EA. (*See* Doc. 107.) Federal Defendants have acknowledged that the SIR was the first time USFS considered Hermosa CMP in its cumulative effects analysis. (Doc. 105 at 12; Doc. 100-1 at 24, 105–06.) Thus,

---

withheld the preparation of a Supplemental EIS pursuant to Section 706(1)." *CBD v. CDOT*, 2013 WL 6698740, at *6 (quoting *Native Songbird Care & Conservation v. LaHood*, No. 13-CV-02265-JST, 2013 WL 3355657, at *6 (N.D. Cal. July 2, 2013)) (cleaned up) (internal quotation marks omitted).

this case is more closely analogous to *Dombeck* than *Marsh* or *Earth Island Institute*, and Plaintiffs' claim to compel USFS to analyze the significance of new information more clearly arises under § 706(1) in the absence of a formal decision not to prepare a supplemental NEPA document.

3. <u>The SIR Is Relevant to Plaintiffs' Supplemental NEPA Claim to the Extent it Cures the Alleged Violation of USFS's NEPA Duty to Supplement</u>

Where, as here, the agency prepares a written determination evaluating the significance of new information *after* the onset of litigation, the court reviews the determination to ensure the agency took the requisite "hard look." *Dombeck*, 222 F.3d at 559–61. Courts have endorsed the use of SIRs as a means by which agencies may evaluate the significance of new information to meet their supplemental NEPA duty. *Earth Island Inst.*, 87 F.4th at 1069 (citing *Idaho Sporting Cong.*, 222 F.3d at 566). In *Dombeck*, after reviewing the agency's SIR and other supplemental analyses, the court concluded "that the Forest Service ha[d] taken the requisite 'hard look' at the [new information]" and "sufficiently and reasonably evaluated the need for an SEIS." *Id.* at 561. Thus, although the court determined the agency had violated NEPA, "it would serve no useful purpose . . . to order the Forest Service to prepare studies that the Forest Service already has completed and that cannot be successfully challenged." *Id.*

Similarly, here, USFS prepared an SIR evaluating the significance of new information regarding Hermosa CMP after USFS's duty to supplement had ended and litigation began. Therefore, the SIR will be relevant to Plaintiffs' supplemental NEPA claim only to the extent that it justifies or cures the agency's failure to take a hard look to determine the significance of the new information regarding Hermosa CMP. (Doc. 100 at 29 n.7, 31–32.) In other words, if Plaintiffs succeed on the merits of their supplemental NEPA claim, the Court will analyze the SIR under the arbitrary and capricious standard to determine whether "the Forest Service has taken the requisite 'hard look' at the [new information]" and "sufficiently and reasonably evaluated the need for [a supplemental NEPA document]." *Dombeck*, 222 F.3d at 561.

In sum, Plaintiffs' supplemental NEPA claim properly arises under § 706(1) and is not futile on that basis. *See Barahona*, 881 F.3d at 1134 (amendment is futile "only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim").

### B. Appropriate Relief

Arizona Standard asserts that "[t]he only available relief for a successful claim under § 706(1) is compelling the agency to take the required action." (Doc. 107 at 5.) Arizona Standard asserts that, rather than requesting an order compelling supplemental analysis, Plaintiffs ask "for the same relief for the § 706(1) claim that they have always requested for the § 706(2) claim: a declaration that USFS violated NEPA and the APA by authorizing the Sunnyside Project and failing to supplement the EA, a permanent injunction, and an order setting aside USFS's EA, FONSI, and DN, and authorization of the Sunnyside Project." (*Id.* at 8.)

Plaintiffs have requested appropriate relief. Plaintiffs' proposed § 706(1) claim alleges that USFS failed to supplement its EA analysis in violation of its NEPA duties, constituting "agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1)." (Doc. 96-1 ¶¶ 130–33.) The SAC's "Request for Relief" section adds language requesting a declaration that USFS violated NEPA and the APA "in failing to supplement the environmental analysis set forth and referenced in [the EA, FONSI, and DN authorizing the Sunnyside Project]." (*Id.* at 96.) Plaintiffs also request "such other and further relief as the Court deems just, equitable, and proper." (*Id.* at 97.) Plaintiffs do not dispute that proper relief for a failure to act claim under § 706(1) is a court order compelling the agency action unlawfully withheld. *See Norton*, 542 U.S. at 62. The Court has authority to grant such relief, and the combination of relief that Plaintiffs are entitled to will vary depending on which of their claims, if any, succeed.

Moreover, "[s]o long as a party is entitled to relief, a trial court must grant such relief despite the absence of a formal demand in the party's pleadings." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (citing Fed. R. Civ. P. 54(c)). Thus, whether Plaintiffs

1    failed to specifically request supplementation is not a proper basis for finding Plaintiffs'

2    proposed amendments futile, and Arizona Standard's objection plainly fails.

3        In conclusion, Plaintiffs' proposed amendments are not futile, and the Court will

4    grant Plaintiffs leave to file the SAC.[10]

5    **III.    Amended Motion to Supplement the Administrative Record**

6        Plaintiffs seek to supplement the administrative record[11] with two categories of

7    evidentiary materials: (1) materials related to USFS's knowledge of Hermosa CMP in

8    relation to the Sunnyside Project approval process, (*see* Doc. 100-1, Exs. B–D, I, K, N–U),

9    a subset of which predates the DN/FONSI for the Sunnyside Project; and (2) two scientific

10   studies documenting the impacts of chronic noise to owl species, (*see id.*, Exs. F–G). (Doc.

11   100 at 19–20.) Plaintiffs also ask the Court to admit materials they sent to USFS to inform

12   the preparation of the SIR. (*Id.* at 31–33; Doc. 100-1, Exs. F–G, V–Z, AA–DD.)

13       **A.  Scope of Review**

14       Plaintiffs argue the materials should be admitted because the Court's review of

15   Plaintiffs' supplemental NEPA claim, under § 706(1), and ESA citizen-suit claim against

16   USFS is not limited to the administrative record. (Doc. 100 at 18.) Plaintiffs also argue

17   their proposed supplementary materials are within the Court's scope of review of Plaintiffs'

---

[10] Arizona Standard's argument that the Ninth Circuit's decision denying injunctive relief does not authorize Plaintiffs' claims makes little sense. The Ninth Circuit clearly contemplated Plaintiffs bringing a supplemental NEPA claim, contingent on Plaintiffs receiving new information. (Doc. 79-1 at 3 n.2 ("This determination is without prejudice to Appellants' ability to seek a supplemental analysis if sufficient information becomes available to trigger the USFS's obligation under 40 C.F.R. § 1502.9(d)(1)(ii).").) The SAC alleges that Plaintiffs have received such information. (Doc. 96-1 ¶ 131.)

[11] The title of Plaintiffs' motion is, "Motion to Supplement the Administrative Record and/or Admit Extra-Record Evidence." (Doc. 100 at 1.) To "supplement the administrative record" means to add documents the agency considered; to "admit extra-record evidence" means to view evidence outside of or in addition to the administrative record that was not necessarily considered by the agency. *Friends of Rapid River v. Probert*, 427 F. Supp. 3d 1239, 1264 (D. Idaho 2019) (citing *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006)). Therefore, generally, Plaintiffs' motion is more aptly viewed as a motion to admit extra-record evidence. However, "because the Ninth Circuit Court of Appeals has referred to the two concepts on a virtually interchangeable basis," and the parties use both terms throughout their briefing, the Court refers to both supplementing the administrative record and admitting extra-record evidence. *See Alaska v. U.S. Dep't of Interior*, No. 22-CV-00078, 2023 WL 2424270, at *3 n.28 (D. Alaska Mar. 9, 2023) (citing *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

§ 706(2) claims and Plaintiffs' ESA claim against FWS under the "relevant factors" exception to the Administrative Record Review Rule ("ARRR"). (*Id.* at 18–20.)

### 1. Plaintiffs' Supplemental NEPA Claim

Plaintiffs argue judicial review of their supplemental NEPA claim under § 706(1) "is not limited to the record at any single point in time, because there is no final agency action to demarcate the limits of the record." (Doc. 100 at 24 (quoting *Dombeck*, 222 F.3d at 560).) Federal Defendants[12] argue Plaintiffs' supplemental NEPA claim is not a failure to act claim under § 706(1) and is thus reviewed under the arbitrary and capricious standard in § 706(2), and, even if Plaintiffs' claim did fall under § 706(1), the ARRR would bar supplementation of the administrative record with Plaintiffs' materials. (Doc. 105 at 10–14.) As discussed above, Plaintiffs' supplemental NEPA claim is a proper failure to act claim arising under § 706(1). *See* discussion *supra* Section II.A. Therefore, the Court will address Federal Defendants' second argument regarding the ARRR only.

In general, courts review "agency decision[s] based on the record the agency presents." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (citing *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402 (1971)); *see* 5 U.S.C. § 706 (directing courts to "review the whole record or those parts of it cited by a party"). The Ninth Circuit recognizes four "narrowly construed and applied" exceptions to this general rule that allow district courts to admit extra-record evidence:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if the "agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). Additionally,

> An action to compel an agency to prepare a[] [Supplemental Environmental Impact Statement ("SEIS")], . . . is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to "compel agency

---

[12] South32 joined Federal Defendants' Opposition to Plaintiffs' Motion to Supplement the Administrative Records. (Doc. 106.) Arizona Standard's independent arguments are addressed where applicable. (*See* Doc. 108.)

1

2

action unlawfully withheld or unreasonably delayed." In such cases, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.

3

4

*Dombeck*, 222 F.3d at 560 (citations omitted). As discussed above, Plaintiffs' supplemental NEPA claim arises under § 706(1).

5

6

7

8

9

10

11

12

13

14

Federal Defendants argue that even if Plaintiffs' supplemental NEPA claim is a proper failure-to-act claim under § 706(1), "Plaintiffs' materials . . . still need to fit within an exception to the [ARRR]." (Doc. 105 at 11.) However, "[t]he Ninth Circuit's treatment of record supplementation in failure-to-act cases strongly suggests that failure to act cases are themselves an independent exception to the record review rule." *Wildearth Guardians*, 2011 WL 905656, at *2 (citing *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 505 (9th Cir. 1997)). In failure-to-act cases, the Ninth Circuit has repeatedly stated that the record is not closed and has not conditioned supplementation on the four *Lands Council* exceptions. *Id.* (first citing *Dombeck*, 222 F.3d at 560; and then citing *S.F. Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002)).

15

16

17

18

19

20

21

22

23

Next, Federal Defendants argue the failure-to-act claim exception to the ARRR described in *Dombeck* applies only "absent a decision on supplementation," and because here USFS has prepared a SIR, the exception does not apply. (Doc. 105 at 13.) This argument fails under *Dombeck*. There, the court allowed the Forest Service to supplement the record with "a new SIR, several Biological Assessments and Biological Evaluations, and other documents." *Dombeck*, 222 F.3d at 560–61. Like USFS here, the agency had prepared a SIR in response to litigation and concluded supplementation was unnecessary. *Id.* Thus, the failure-to-act exception applies regardless of whether the agency has prepared an SIR or made a decision not to supplement.

24

25

26

27

28

Federal Defendants also argue *Dombeck* allows only the agency to supplement the record, not plaintiffs. (Doc. 105 at 13 n.3.) However, "in failure-to-act cases brought under . . . § 706(1) of the APA . . . the record may be supplemented by any party not merely the agency." *Nw. Env't Advocs. v. U.S. Env't Prot. Agency*, No. 21-CV-01136, 2022 WL 15331465, at *3 (D. Or. Oct. 24, 2022) (citing *Stop B2H Coal. v. Bureau of Land Mgmt.*,

552 F. Supp. 3d 1101, 1118–19 (D. Or. 2021)); *see also Indep. Mining Co.*, 105 F.3d at 511–12 (reasoning that district court properly "permitted both sides to submit supplemental evidence" under § 706(1) failure-to-act exception). Accordingly, Plaintiffs are "not precluded by law from supplementing the record" with respect to their supplemental NEPA claim. *Wildearth Guardians*, 2011 WL 905656, at *3. Whether Plaintiff should be permitted to do so "is a decision that lies within the sound discretion of the trial judge." *Id.* (citing *S.F. Baykeeper*, 297 F.3d at 886).

## 2. Plaintiffs' ESA Citizen-Suit Claim

Plaintiffs assert that their ESA claim against USFS arises under the ESA citizen-suit provision, and therefore the scope of review is not limited to the administrative record. (Doc. 100 at 41–43.) Federal Defendants argue: (1) Plaintiffs' challenge to USFS's reliance on the BiOp is not distinct from their claim against FWS that the BiOp itself is arbitrary and capricious;[13] and (2) there is no exception to the ARRR for ESA citizen-suit claims. (Doc. 105 at 14–16.)

Federal Defendants fail to provide support for their first argument and summarily conclude that "[i]t would be inconsistent" for a different scope of review to apply to Plaintiffs' ESA claims against USFS and FWS.

"The APA provides judicial review for 'final agency action for which there is no other adequate remedy in a court.'" *Wash. Toxics Coal. v. Env't Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005) (quoting 5 U.S.C. § 704). The subsection of the ESA's citizen-suit provision at issue authorizes "any person [to] commence a civil suit . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of [the ESA] or regulation [implementing the ESA]." 16 U.S.C. § 1540(g)(1)(A). Section 1540(g)(1)(A) is used to "enforce the substantive provisions of the ESA against regulated parties," including government agencies, but does not authorize judicial review of the Interior Secretary's

---

[13]  It is uncontested that Plaintiffs' ESA claim against FWS challenging the BiOp as arbitrary and capricious arises under § 706(2) of the APA. (*See* Doc. 105 at 14; Doc. 113 at 20–21 (citing *Bennett*, 520 U.S. at 175–79).)

1   implementation of the ESA. *Bennett*, 520 U.S. at 173. The citizen-suit provision "creates

2   an express, adequate remedy" for claims that a *regulated* agency violated § 7(a)(2) of the

3   ESA, 16 U.S.C. § 1536(a)(2), and therefore such claims do not arise under the APA. *See*

4   *Wash. Toxics Coal.*, 413 F.3d at 1029–30, 1034 (holding plaintiff's claim EPA violated §

5   7(a)(2) by failing to consult with the implementing agency arose under the ESA's citizen-

6   suit provision rather than the APA); *Kraayenbrink*, 632 F.3d at 495–96 (same).

7        Plaintiffs' ESA claim against USFS seeks to enforce a substantive provision of the

8   ESA, that in fulfilling § 7(a)(2)'s consultation requirements "each agency shall use the best

9   scientific and commercial data available," against a regulated agency, USFS. (Doc. 96-1

10  ¶¶ 113–16.) Thus, the claim properly arises under the ESA citizen-suit provision and is

11  distinct from Plaintiffs' ESA claim challenging the BiOp prepared by FWS under § 706(2)

12  of the APA. Federal Defendants do not meaningfully contend with the case law discussed

13  above and upon which Plaintiffs rely.

14       Federal Defendants' argument that no exception to the ARRR exists for ESA

15  citizen-suit claims also fails. The Ninth Circuit has "stated unequivocally that the scope of

16  review for ESA citizen-suit claims is not provided for by the APA and as a result parties

17  may submit and the court may consider evidence outside the administrative record."

18  *Wildearth Guardians*, 2011 WL 905656, at *3 (citing *Kraayenbrink*, 632 F.3d at 497); *see*

19  *also Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 926 & n.11 (9th Cir.

20  2020) (following *Kraayenbrink* and considering an extra-record report in review of ESA

21  claim that EPA failed to use the best data available under § 7(a)(2)).

22       Federal Defendants characterize *Kraayenbrink* "as an unusual case where the court

23  found supplementation appropriate" and cite several cases discussing the general rules that

24  the APA governs review of agencies' compliance with the ESA and that judicial review is

25  typically limited to the administrative record. (Doc. 105 at 15 (citing *United States v. Carlo*

26  *Bianchi & Co.*, 373 U.S. 709, 715 (1963); *Ninilchik Traditional Council v. United States*,

27  227 F.3d 1186, 1193–94 (9th Cir. 2000); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d

28  1006, 1017 (9th Cir. 2012) (en banc); *Ctr. for Biological Diversity v. Haaland*, 87 F.4th

980, 987 (9th Cir. 2023); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014)).) However, the *Kraayenbrink* court was explicit in setting out the ESA citizen-suit exception to the ARRR: "under *Washington Toxics Coalition* we may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim." 632 F.3d at 497. And "the *Kraayenbrink* decision did not affect Ninth Circuit precedent with respect to the standard of review in ESA citizen suit cases, which remains arbitrary and capricious." *Wildearth Guardians*, 2011 WL 905656, at *3 n.1.

      The cases Federal Defendants rely on do not contradict *Kraayenbrink*. For example,

> In *Karuk Tribe*, the en banc Court recited the familiar APA standard of review applicable to ESA cases but did not otherwise discuss whether the scope of judicial review of an ESA citizen-suit claim is limited to the administrative record. *Id.* ("Because this is a record review case, we may direct that summary judgment be granted to either party based upon our review of the administrative record."). Nor did *Karuk Tribe* discuss either *Kraayenbrink* or *Washington Toxics Coalition* with respect to this issue, let alone expressly overrule them on this point.

*Don't Cage Our Oceans v. U.S. Army Corps of Eng'rs*, No. C22-1627, 2023 WL 6959289, at *1 (W.D. Wash. Oct. 20, 2023). Similarly, *San Luis & Delta-Mendota Water Authority v. Jewell* and *Ctr. for Biological Diversity v. Haaland* stand only for the general rule that because the ESA does not provide a separate standard of review, ESA claims are reviewed under the APA's arbitrary and capricious standard. *See San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d at 601; *Ctr. for Biological Diversity v. Haaland*, 87 F.4th at 987. In *Ninilchik Traditional Council*, the Ninth Circuit again discussed the general APA standard of review, not the scope of review for ESA citizen-suit claims. 227 F.3d at 1193–94. The Supreme Court's decision in *Carlo Bianchi & Co.* has limited relevance here as it dealt with the scope of review in a case brought in the Court of Claims under the Wunderlich Act and predates the passage of the ESA by 10 years and the Ninth Circuit's *Lands Council* decision by 42 years. *See* 373 U.S. 709.

      In sum, for the limited purpose of reviewing Plaintiffs' ESA citizen-suit claim against USFS, supplementation of the administrative record is not precluded by law.

      3.  Plaintiffs' § 706(2) Claims

      Plaintiffs also seek to supplement the administrative record with respect to their

1     NEPA claim that the cumulative effects analysis in the Sunnyside EA was arbitrary and

2     capricious, (Doc. 96-1 ¶¶ 123–28), and their ESA claim that FWS failed to use the best

3     scientific and commercial data available in analyzing the impacts of the Sunnyside Project

4     in the BiOp, (*id.* ¶¶ 112–17). (Doc. 100 at 34–41.) Both claims arise under § 706(2) of the

5     APA and thus are governed by the ARRR. Plaintiffs argue the "relevant factors" exception

6     to the ARRR permits supplementation of the record for review of these claims.

7         The ARRR provides that, "In general, a court reviewing agency action under the

8     APA must limit its review to the administrative record." *San Luis & Delta-Mendota Water*

9     *Auth. v. Locke*, 776 F.3d 971 (9th Cir. 2014) (citing *Camp v. Pitts*, 411 U.S. 138, 142

10     (1973)). The "relevant factors" exception, one of the four *Lands Council* exceptions,

11     permits admission of extra-record evidence "if admission is necessary to determine

12     'whether the agency has considered all relevant factors and has explained its decision.'"

13     *Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity*, 100 F.3d at

14     1450). The *Lands Council* exceptions "operate to identify and plug holes in the

15     administrative record," and their scope "is constrained, so that the exception does not

16     undermine the general rule." *Id.* The party seeking supplementation of the record bears the

17     "heavy burden" of demonstrating that the additional materials sought are necessary to

18     adequately review the agency decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602

19     F.3d 1125, 1131 (9th Cir. 2010).

20         In *San Luis & Delta-Mendota Water Auth. v. Locke*, the Ninth Circuit explained the

21     relevant factors exception:

> Although the relevant factors exception permits a district court to consider
> extra-record evidence to develop a background against which it can evaluate
> the integrity of the agency's analysis, the exception does not permit district
> courts to use extra-record evidence to judge the wisdom of the agency's
> action. This distinction is a fine, but important, one. Reviewing courts may
> admit evidence under this exception only to help the court understand
> whether the agency complied with the APA's requirement that the agency's
> decision be neither arbitrary nor capricious. But reviewing courts may not
> look to this evidence as a basis for questioning the agency's scientific
> analyses or conclusions.

27     776 F.3d at 993 (citations omitted). Additionally, in NEPA cases, courts may permit

28     introduction of extra-record evidence "where the plaintiff alleges that an EIS has neglected

to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism . . . under the rug." *Or. Nat. Res. Council v. Lowe*, 109 F.3d 521, 526–27 (9th Cir. 1997) (internal quotation marks omitted) (quoting *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436–38 (9th Cir. 1988), *amended by* 867 F.2d 1244 (9th Cir. 1989)).

Federal Defendants argue the relevant factors exception: (1) requires Plaintiffs to make an independent, threshold showing that the record as lodged is so deficient as to frustrate effective judicial review; and (2) applies only when an agency has entirely missed a relevant topic. (Doc. 105 at 16–20.) These arguments miss the mark.

First, the Court agrees with Plaintiffs that the "effectively frustrate judicial review" language used by the Ninth Circuit, and some district courts within this circuit, does not create an independent burden, but rather collapses into, or helps explain, the *Lands Council* exceptions. *See Ctr. for Biological Diversity v. Jewell*, No. CV-12-02296-PHX-DGC, 2014 WL 116408, at *1 (D. Ariz. Jan. 13, 2014) (quoting *Hodel*, 840 F.2d at 1436). The relevant factors exception applies if admission of extra-record evidence is necessary to determine whether the agency has considered all relevant factors and has explained its decision. *Lands Council*, 395 F.3d at 1030. A showing that the present administrative record is insufficient to review Plaintiffs' § 706(2) claims is substantively the same as a showing that "the additional materials sought are necessary to adequately review the [agency]'s decision." *Fence Creek Cattle Co.*, 602 F.3d at 1131. Either way, the Court must consider the present administrative record and determine whether supplementation is necessary. To this Court's knowledge, in reviewing a party's request to supplement the record under a *Lands Council* exception, the Ninth Circuit has never analyzed a "threshold showing" that the record will effectively frustrate judicial review separately and prior to analyzing whether the exception applies.[14] Essentially, Federal Defendants ask the Court to recognize an independent

---

[14]    In *Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*, No. 18-CV-01420, 2019 WL 6977406, at *8 (D. Or. Dec. 20, 2019), the court stated, "there is ample authority, in the Ninth Circuit and th[e District of Oregon], demonstrating that a party seeking to invoke the *Lands Council* exceptions must first show the administrative record is inadequate to

requirement that is redundant in light of what the *Lands Council* exceptions already require.

Second, the relevant factors exception does not apply only when the agency has entirely missed a relevant topic. Again, the relevant factors exception permits admission of extra-record evidence "if admission is necessary to determine 'whether the agency has considered all relevant factors *and has explained its decision*.'" *Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450) (emphasis added). "Reviewing courts may admit evidence under this exception only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d at 993. Federal Defendants argue the documents sought to be admitted "must point out an entirely new general subject matter that the defendant agency failed to consider" because an agency's decision is "normally arbitrary and capricious where the agency *entirely* fails to consider an important aspect of the problem." (Doc. 105 at 18–19 (quoting *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1234 (E.D. Cal. 2013); and *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).) However, an agency's decision is also arbitrary and capricious if the agency has offered an explanation for its decision that runs counter to the evidence before the agency. *State Farm*, 463 U.S. at 43. Federal Defendants are correct that the party seeking supplementation must do more than argue the agency should have considered the information or establish the information's relevance, but the relevant factors exception is not as narrow as Federal Defendants suggest.

//

---

effectively review the challenged action." Of course, courts may not admit extra-record evidence under the relevant factors exception if the administrative record is adequate to review a party's claims. But neither Ninth Circuit case cited by the *Nw. Env't Advocs.* court, *Fence Creek Cattle Co.* and *San Luis & Mendota Water Authority v. Jewell*, stands for the proposition that a party must show the inadequacy of the record *prior to* invoking a *Lands Council* exception. *See Fence Creek Cattle Co.*, 602 F.3d at 1131 (holding district court did not abuse its discretion in denying supplementation request under the bad faith exception because plaintiff failed to make an adequate showing of necessity); *San Luis & Mendota Water Authority v. Jewell*, 747 F.3d at 602–04 (holding district court erred in admitting more than forty expert declarations where the four court-appointed experts sufficiently explained highly technical material in a BiOp).

**B. Record Supplementation**

As noted above, Plaintiffs seek to supplement the record with two categories of evidentiary materials: (1) materials related to USFS's knowledge of Hermosa CMP in relation to the Sunnyside Project approval process;[15] and (2) two scientific studies documenting the impacts of chronic noise to owl species, (*see* Doc. 100-1, Exs. F–G).[16] (Doc. 100 at 19–20.) Plaintiffs also ask the Court to admit materials they sent to USFS to inform the preparation of the SIR. (*Id.* at 31–33; Doc. 100-1, Exs. F–G, V–Z, AA–DD.)

    1. Hermosa-CMP Related Materials

        a. *Materials Relevant to Plaintiffs' Supplemental NEPA Claim*

Having determined review of Plaintiffs' supplemental NEPA claim "is not limited to the record as it existed at any single point in time," *Dombeck*, 222 F.3d at 560, the decision to admit or exclude extra-record evidence is within the Court's discretion. *Wildearth Guardians*, 2011 WL 905656, at *3 (citing *S.F. Baykeeper*, 297 F.3d at 886); *cf. Fence Creek Cattle Co.*, 602 F.3d at 1131 (citing *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1447) (reviewing district court's decision not to supplement the record under a *Lands Council* exception for an abuse of discretion). Under these circumstances, "a party should be permitted to supplement the record with evidence that is relevant to the question of whether relief should be granted." *Wildearth Guardians*, 2011 WL 905656, at *3.

Plaintiffs argue all Hermosa CMP-related materials cited in their Motion to

---

[15] A subset of these materials postdates the June 16, 2023 DN/FONSI and therefore may be admitted only for the limited purpose of reviewing Plaintiffs' supplemental NEPA claim. (*See* Doc. 100-1, Exs. I, K, T, U.) This subset also includes "[d]ocuments the existence of which has been disclosed by Federal Defendants, but which are not available to Plaintiffs," including a Hermosa CMP plan of operations received by USFS on August 17, 2023, documentation related to USFS's approval of the Sunnyside Project plan of operations on September 7, 2023, and a June 22, 2023 presentation by South32 on Hermosa CMP and Q&A between South32 and agency staff. (Doc. 100 at 20.) Another subset of the Hermosa CMP-related materials predates the DN/FONSI for the Sunnyside Project and therefore may be admitted for the purpose of reviewing both Plaintiffs' Supplemental NEPA claim and Plaintiffs' § 706(2) Hermosa CMP-related NEPA claim. (*See* Doc. 100-1, Exs. B–D, N–S.)

[16] Plaintiffs seek admission of the Mason and Senzaki studies to inform the Court's review of: (1) Plaintiffs' ESA citizen-suit claim against USFS; (2) Plaintiffs' ESA claim against FWS arising under § 706(2); (3) the adequacy of the SIR as it relates to Plaintiffs' supplemental NEPA claim; and (4) Plaintiffs' Hermosa CMP-related NEPA claim arising under § 706(2). (Doc. 100 at 31, 34, 38–43.)

Supplement, (Doc. 100 at 20–22), are relevant to their supplemental NEPA claim that alleges "USFS failed to supplement its EA analysis for the Sunnyside Project despite receiving significant new information [about the substance and scope of Hermosa CMP] relevant to environmental concerns about th[e cumulative impacts of the Sunnyside Project and Hermosa CMP] before approving the plan of operations for the Sunnyside Project." (Doc. 100 at 24; Doc. 96-1 ¶ 131.) The Court agrees.

At the preliminary injunction stage, this Court and the Ninth Circuit found the publicly accessible documents related to Hermosa CMP, (Doc. 100-1, Exs. B–D), insufficient to trigger USFS's NEPA duty to analyze the cumulative effects of the Sunnyside Project and Hermosa CMP. (Doc. 48 at 9–10; Doc. 79-1 at 3–4 & n.2.) Arizona Standard argues it would therefore be futile to admit these documents. (Doc. 108 at 10–11.) However, "decisions at the preliminary injunction phase do not constitute the law of the case," and "the fully developed factual record may be materially different from that . . . before the [Court at the preliminary injunction phase]." *Ctr. for Biological Diversity v. Salazar*, 706 F.3d at 1090 (citation omitted). The documents' insufficiency, in the absence of other evidence, does not mean they are irrelevant to the question of whether Hermosa CMP was reasonably foreseeable to USFS. The Court will consider Exhibits, B, C, and D as part of a more fully developed factual record in assessing Plaintiffs' supplemental NEPA claim.[17]

The documents the existence of which has been disclosed by Federal Defendants[18] are relevant to the question of what USFS knew about Hermosa CMP after issuing the DN/FONSI but prior to approving the Sunnyside Project plan of operations on September 7, 2023. South32 gave a presentation to USFS staff on Hermosa CMP, followed by a Q&A, and then sent USFS a plan of operations for Hermosa CMP on August 17, 2023. (Doc. 100-1, Ex. K.) Arizona Standard preemptively argues the merits of Plaintiffs' supplemental NEPA claims by asserting that these documents are speculative and do not matter to the

---

[17]  Because these documents predate the DN/FONSI, the Court will also consider them in reviewing Plaintiffs' § 706(2) Hermosa CMP NEPA claim.

[18]  *See supra* note 15.

analysis and overall outcome of the agency's action. (Doc. 108 at 11.) Perhaps, but the information in these documents could, on their own or in combination with other evidence, constitute "significant new information" triggering the NEPA duty to supplement. The Court cannot effectively review Plaintiffs' supplemental NEPA claim without admitting these documents, and the Court will order USFS to produce them.

Next, Plaintiffs seek admission of documents obtained pursuant to their FOIA requests. These documents include a FAST-41 Initiation Notice, FAST-41 Project Initiation Plan, an email thread between USFS staff discussing a comment submitted through the Hermosa CMP permitting dashboard, and other email communications involving USFS staff, including an invitation to a July 27, 2023 Hermosa CMP site visit. (Doc. 100-1, Exs. I, K, N–U.) Federal Defendants argue they are not required to include all documents produced in response to FOIA requests in the administrative record merely because they are in the agency's possession. (Doc. 105 at 22–23 (citing *Stand Up for Cal.! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 117 (D.D.C. 2014)).) But whether the documents are in Federal Defendants' possession is a separate question from whether the documents are relevant to Plaintiffs' supplemental NEPA claim. And once again, these documents appear relevant to the content and timing of USFS's knowledge of Hermosa CMP prior to approval of the Sunnyside Project plan of operations. The Court will allow admission of the FOIA documents.

b. *Materials Plaintiffs Sent USFS to Inform Preparation of the SIR*

Plaintiffs seek admission of materials they sent to USFS to inform preparation of the SIR[19] because the materials document new information about Hermosa CMP, are necessary to show the deficiency of the SIR, and allow the court to address any argument

---

[19]  The documents include the Mason and Senzaki studies, the letter Plaintiffs sent USFS to inform its SIR, the declaration of wildlife ecologist Douglas J. Tempel, a Hermosa CMP project timeline, a map of the Sunnyside and Hermosa CMP projects prepared by Plaintiffs, 2023 survey results of Mexican spotted owls in the Patagonia Mountains and a FWS Senior Wildlife Biologist's email to the company that performed the survey with comments on the survey, the declaration of Randy Serraglio describing his observation of Mexican spotted owls in July 2023 in Humboldt Canyon, and a June 10, 2024 letter from FWS to USFS with scoping comments in response to USFS's notice of intent to prepare an EIS for Hermosa CMP. (*See* Doc. 100-1, Exs. F–G, V–Z, AA–DD.)

that the SIR obviates the need for a supplemental NEPA document. (Doc. 100 at 31–33.) Federal Defendants argue they were not required to accept public comment in deciding whether to supplement the EA and in any event the documents are irrelevant. (Doc. 105 at 21–22.)

As discussed above, if Plaintiffs succeed on the merits of their supplemental NEPA claim, the Court will analyze the SIR under the arbitrary and capricious standard to determine whether "the Forest Service has taken the requisite 'hard look' at the [new information]" and "sufficiently and reasonably evaluated the need for [a supplemental NEPA document]." *Dombeck*, 222 F.3d at 561. The only new information USFS considered in preparing the SIR was the Hermosa CMP Mine Plan of Operations amended April 15, 2024, (USFS 030915–031133), an October 2022 list of threatened and endangered species that may occur in the Sunnyside Project area, (USFS 028313–30), and an updated species list from August 2024, (USFS 031134–50).[20] Plaintiffs allege the SIR "offered only conclusory assertions that the cumulative impacts of the Sunnyside Project would not change based on new information" and "disregarded important evidence that such cumulative impacts would be significant." (Doc. 96-1 ¶ 132.)

The Court agrees with Federal Defendants that NEPA did not require USFS to open preparation of the SIR to public participation or comment. *See Dombeck*, 222 F.3d at 559–60. However, in the context of this case, Federal Defendants' argument that the materials Plaintiffs sent were not properly before the agency borders on disingenuous. In their Motion to Stay Deadlines in this litigation to allow USFS time to prepare the SIR, Federal Defendants stated they would "provide amended records to the parties and the Court that include the materials the Forest Service is considering in the SIR—many of which are the subject of Plaintiffs' pending record motion—streamlining the dispute about the contents of the administrative records." (Doc. 91 at 2.) Plaintiffs' original motion to supplement

___

[20] Arizona Standard's argument that Plaintiffs' materials should not be admitted because they postdate final approval of the Sunnyside Plan of Operations, (Doc. 108 at 13–14), fails both because the Court's "review [of Plaintiffs'] § 706(1) claim] is not limited to the record as it existed at any single point in time," *Dombeck*, 222 F.3d at 560, and because USFS considered other documents postdating approval of the Sunnyside plan of operations.

1    requested inclusion of all the materials that are the subject of Plaintiffs' pending motion to

2    supplement, except for the materials Plaintiffs sent USFS after the Court had granted the

3    stay. (Doc. 85 at 17–19, 29.) Federal Defendants seem to have forgotten their stated goal

4    of preserving "the Court and the parties' resources, as well as simplify[ing] next steps in

5    this case," failed to include in the amended administrative record any of the materials that

6    were the subject of Plaintiffs' original motion to supplement, and chosen to dispute every

7    aspect of Plaintiffs' amended motion to supplement the record. (Doc. 91 at 2.)

8        In determining whether the SIR took a hard look at potentially significant impacts,

9    the Court must defer to the agency's discretion. *Price Road Neighborhood Ass'n, Inc. v.*

10   *U.S. Dep't of Transp.*, 113 F.3d 1505, 1511 (9th Cir. 1997). But that discretion must be

11   *informed*, i.e., based on a reasoned evaluation of relevant factors and supported by adequate

12   scientific data. *See id.* Therefore, it appears possible that here, "[i]n refusing to assess new

13   information, at a time where the agency itself had requested a [stay] to consider new

14   information . . . , the Forest Service [may have] disregarded its duty under NEPA to be

15   alert to information that might alter the result of the original analysis and to continue to

16   take a hard look at the environmental effects of a planned action." *Or. Nat. Res. Council*

17   *Action v. U.S. Forest Serv.*, 445 F. Supp. 2d 1211, 1228 (D. Or. 2006) (citing *Dombeck*,

18   222 F.3d at 557–58). The documents appear relevant to the question of whether USFS

19   sufficiently considered the significance of new information regarding the cumulative

20   impacts of Hermosa CMP, especially on Mexican spotted owls. *See Wildearth Guardians*,

21   2011 WL 905656, at *3. Thus, the Court will consider them in determining whether the

22   SIR took the necessary hard look.[21]

23   _____

24   [21] The cases Arizona Standard cites in opposition to this conclusion are inapposite. (Doc.
     108 at 13–14 (citing *Cold Mountain v. Garber*, 375 F.3d 884 (9th Cir. 2004); and

25   *Greenpeace Action v. Franklin*, 14 F.3d 1324 (9th Cir. 1992)).) In *Cold Mountain*, the
     court's references to "post hoc evidence" were in the context of addressing the plaintiff's

26   claim that the agency failed to prepare an EIS before issuing a FONSI, not in the context
     of a supplemental NEPA claim under § 706(1). *See* 375 F.3d at 892–94. The court rejected

27   the plaintiff's § 706(1) claim on the basis that no major federal action remained to occur,
     which is irrelevant here because major federal action remained to occur until final approval
     of the Sunnyside plan of operations. *Id.* at 894; *see* discussion *supra* Section II.A.1.a.

28   Similarly, in *Greenpeace*, the plaintiff challenged the agency's FONSI and decision not to

1

### c.  *Materials Relevant to Plaintiffs' § 706(2) NEPA Claim*

Plaintiffs seek admission of Hermosa CMP-related materials that predate the June 16, 2023 DN/FONSI, (Doc. 100-1, Exs. B–D, N–S), and the Mason and Senzaki studies, (*id.* Exs. F–G), to demonstrate USFS's failure to consider relevant factors in the EA. (Doc. 100 at 34.) The relevant factors exception applies if admission of extra-record evidence is necessary to determine whether the agency has considered all relevant factors and explained its decision. *Lands Council*, 395 F.3d at 1030. Additionally, in NEPA cases, courts may permit introduction of extra-record evidence "where the plaintiff alleges that an EIS has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism . . . under the rug." *Or. Nat. Res. Council v. Lowe*, 109 F.3d at 526–27 (quoting *Hodel*, 840 F.2d at 1436–38) (internal quotation marks omitted).

Plaintiffs' § 706(2) NEPA claim alleges the Sunnyside Project EA's cumulative impacts analysis was arbitrary and capricious because it lacks a sufficiently detailed catalogue of other projects and any quantified or detailed information about their cumulative impacts. (Doc. 96-1 ¶¶ 124–26.) Plaintiffs argue extra-record materials should be admitted because USFS unlawfully failed to consider two relevant factors: (1) Hermosa CMP; and (2) "the likely *cumulative* impact of years of chronic noise on Mexican spotted owls." (Doc. 100 at 35–37.) Federal Defendants argue the current administrative records include sufficient information on Hermosa CMP and Mexican spotted owls. (Doc. 105 at 19–20.)

Federal Defendants cite three documents as evidence they did not fail to consider Hermosa CMP: (1) a June 17, 2019 Hermosa Project Mineral Resource Declaration, USFS 009024–43; (2) the South32 Hermosa Inc. Critical Minerals Exploration and Mine Plan of Operations amended April 15, 2024, USFS 030915–1133; and (3) the October 2024 Sunnyside Project SIR, USFS 031151–65. The Mine Plan of Operations and Sunnyside

prepare an EIS, rather than the agency's decision not to supplement. 14 F.3d at 1330, 1333. Moreover, *the court* considered the affidavits of scientists and experts the plaintiff had presented to the district court "to determine whether the [agency] considered all relevant factors in reaching its conclusion of no significant impact." *Id.* at 1334 & n.12.

SIR postdate the June 16, 2023 DN/FONSI and are therefore irrelevant to Plaintiffs' NEPA claim that the Sunnyside EA's cumulative impacts analysis was inadequate, which hinges on USFS's pre-DN/FONSI awareness of Hermosa CMP.[22] The 2019 Mineral Resource Declaration does not contain any details regarding planned operations on the Trench Camp property, nor does it discuss plans for future expansion of operations onto public lands or Hermosa CMP.[23] USFS 009024–43. It simply provides an estimate of mineral resources in the Taylor and Clark Deposits. USFS 009025. Thus, it appears Plaintiffs are correct that the current administrative record does not contain a single document relevant to USFS's knowledge of Hermosa CMP pre-DN/FONSI. The Court will allow admission of Exhibits B, C, D, N, O, P, Q, R, and S and consider them in reviewing Plaintiffs' § 706(2) claim challenging the EA's cumulative impacts analysis.

Federal Defendants argue the administrative records "contain extensive information on the Mexican Spotted Owl." (Doc. 105 at 19.) Federal Defendants refer to the final rule listing the Mexican spotted owl as threatened under the ESA, USFS 000758–82, the corresponding recovery plan, USFS 001008–1355, a study entitled "Effects of Helicopter Noise on Mexican Spotted Owls" ("the Delaney Study"), USFS 001824–42, survey results for Mexican spotted owls in the Patagonia Mountains from 2018, USFS 008367–73, and the Final Sunnyside BiOp, FWS 01982–2084. Federal Defendants do not point to specific pages within these documents that address the impacts of chronic noise.

The listing rule does not mention noise impacts. *See* USFS 000758–82. The recovery plan briefly mentions the potential impact of noise from motorized and nonmotorized recreational vehicles and recommends implementing research into the

---

[22] As discussed *supra* Section II.A.3, the new materials are relevant to the question of whether Federal Defendants have cured any potential NEPA violations related to their cumulative impacts analyses and whether relief should be granted.

[23] Hermosa CMP is an expansion of South32's "[e]xisting and future operations on adjacent private land," i.e., the patented mine claims on the 450-acre Trench Camp property encompassing the Taylor and Clark deposits, onto or beneath unpatented mine claims on public lands in the Coronado National Forest. USFS 029391, 031156. The expansion "include[s] additional underground mining, tailings storage, exploration, construction of a primary access road, wells for monitoring and for groundwater management, and recharge basins," resulting in an additional 480 acres of surface disturbance on public lands. USFS 030921–31.

effects of noise-producing activities on nesting spotted owls. USFS 001102, 001132, 001161, 001164. The survey results do not contain any information about noise impacts. USFS 008367–73. The Delaney Study involved "161 helicopter and chain saw manipulations during the 1995 nonnesting and the 1996 nesting seasons," and therefore does not appear to provide sufficient information to evaluate long-term chronic noise impacts. USFS 001832. The BiOp discusses noise impacts in greater depth, FWS 02013–20, but concludes, "Project-related effects associated with noise and visual disturbance will be temporary and will cease following completion of reclamation activities," FWS 02017. Thus, the BiOp also does not appear to discuss chronic, long-term noise impacts.

Because Plaintiffs allege the EA "has neglected to mention a serious environmental consequence," i.e., the likely cumulative impact of years of chronic noise on Mexican spotted owls, the Court "may . . . permit the introduction of new evidence." *Or. Nat. Res. Council v. Lowe*, 109 F.3d at 526–27; *see also Hausrath v. U.S. Dep't of the Air Force*, 491 F. Supp. 3d 770, 785–87 (D. Idaho 2020) (admitting extra-record witness declaration commenting on agency's failure to adequately analyze noise impacts in its EA); *Hells Canyon Pres. Council v. Jacoby*, 9 F. Supp. 2d 1216, 1223 (D. Or. 1998) (allowing introduction of extra-record evidence where plaintiffs alleged agencies "failed to properly consider relevant environmental consequences" including "likely significant impacts on threatened chinook and steelhead"). The Court will admit the Mason and Senzaki studies (Doc. 100-1, Ex. F–G), and consider them in reviewing Plaintiffs' § 706(2) claim challenging the EA's analysis of cumulative impacts on Mexican spotted owls.[24]

//

//

---

[24] In discussing cumulative impacts on the Mexican spotted owl, the EA mentions noise impacts from current exploratory activity on the Trench Camp property and states, "South32 anticipates developing a mine and mill on the site in the near future, which could increase the level of disturbance at the site." USFS 029402–03. Plaintiffs claim this analysis is insufficiently detailed and "failed to incorporate any quantitative analysis of noise and light impacts on affected owls from the Sunnyside Project and adjacent developments, and instead relied on the flawed FWS BiOp to justify a determination that the Sunnyside project would not significantly impact [the Mexican spotted owl]." (Doc. 96-1 ¶¶ 126–27.)

1

2.  <u>Materials Relevant to Plaintiffs' ESA Claims</u>

2

a.  *Materials Relevant to Plaintiffs' ESA Citizen-Suit Claim*

3       The Court "may consider evidence outside the administrative record for the limited

4    purpose[] of reviewing Plaintiffs' ESA [citizen-suit] claim." *Kraayenbrink*, 632 F.3d at

5    497; *see* discussion *supra* Section III.A.2. Federal Defendants and Arizona Standard argue

6    the Court cannot consider the Mason and Senzaki studies because Plaintiffs did not submit

7    the studies during public comment periods. (Doc. 105 at 22; Doc. 107 at 16.) Arizona

8    Standard does not cite any authority in support of its argument. The lone case cited by

9    Federal Defendants did not involve any ESA claims. *See Lands Council v. McNair*, 629

10   F.3d 1070, 1075–76 (9th Cir. 2010). Regardless, Federal Defendants do not argue that the

11   issue of noise impacts on Mexican spotted owls was never raised during the administrative

12   process. (Doc. 105 at 22 (citing *McNair*, 629 F.3d at 1076 ("A party forfeits arguments that

13   are not raised during the administrative process.")).) The Mason and Senzaki studies are

14   the basis of Plaintiffs' claim that USFS failed to use the best scientific and commercial data

15   available, and the Court cannot effectively review this claim without considering the

16   studies.

17

b.  *Materials Relevant to Plaintiffs' ESA Claim Against FWS*

18      Plaintiffs also seek admission of the Mason and Senzaki studies to inform the

19   Court's review of Plaintiffs' ESA claim against FWS. (Doc. 100 at 39–41.) Because this

20   claim arises under § 706(2), Plaintiffs argue admission is warranted under the relevant

21   factors exception. (*See id.*) Again, the Mason and Senzaki studies are the basis of Plaintiffs'

22   claim that FWS failed to use the best available science in preparing the BiOp and thus are

23   necessary for the Court to effectively review this claim. Neither Federal Defendants nor

24   Arizona Standard present any responsive arguments that the Court has not already rejected.

25   //

26   //

27   //

28   //

**IV.**    **Conclusion**

The Court will grant Plaintiffs' Amended Motion for Leave to File Second Amended Complaint because Plaintiffs' supplemental NEPA claim arises under § 706(1) of the APA and the proposed amendments would not be futile. For the reasons discussed above, the Court will grant Plaintiffs' Amended Motion to Supplement the Administrative Record and/or Admit Extra Record Evidence in full. The Court will admit Exhibits B–D, F–G, I, K, N–U, V–Z, and AA–DD to Plaintiffs' Motion and may consider them in reviewing Plaintiffs' claims to the extent described in this order. (*See* Doc. 100 at 20–23; Doc. 100-1.) Additionally, the Court will order Federal Defendants to produce the documents "the existence of which has been disclosed by Federal Defendants, but which are not available to Plaintiffs." (*See* Doc. 100 at 20.)

Accordingly,

**IT IS ORDERED:**

1.    Plaintiffs' Amended Motion for Leave to File Second Amended Complaint for Declaratory and Injunctive Relief (Doc. 96) is **granted**. Plaintiffs must file their Second Amended Complaint within **14 days** of the date of this Order.

2.    Plaintiffs' Amended Motion to Supplement the Administrative Record and/or Admit Extra-Record Evidence, and Alternative Request for Limited Discovery (Doc. 100) is **granted in full**.

3.    Exhibits B–D, F–G, I, K, N–U, V–Z, and AA–DD to Plaintiffs' Motion, (Doc. 100-1 at 36–230), are admitted, and the Court may consider them in reviewing Plaintiffs' claims to the extent described in this Order.

4.    Within **21 days** of the date of this Order, Federal Defendants shall produce: (a) the Hermosa CMP Plan of Operations received by USFS on August 17, 2023; (b) documentation of, and correspondence concerning, USFS's approval of the Sunnyside Project plan of operations on September 7, 2023; (c) the June 22, 2023 presentation by South32 on Hermosa CMP, including the slides, a recording, and any other records documenting the presentation; and (d) any notes, transcription, or recording of the Q&A

between South32 and agency staff on June 22, 2023.

5.    The parties must meet and confer and submit a joint proposed summary judgment briefing schedule within **14 days** of the date of this Order. (*See* Doc. 102.)

Dated this 24th day of September, 2025.

Jennifer G. Zipps
Chief United States District Judge