Joy E. Herr-Cardillo (009718)
c/o University of Arizona James E. Rogers College of Law
P.O. Box 210176
1201 E. Speedway,
Tucson, AZ  85721
jherrcar@arizona.edu
Telephone: (520) 626-1312

*Attorney for the Town of Patagonia*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patagonia Area Resource Alliance, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>United States Forest Service, et al.,<br><br>    Federal Defendants,<br><br>    and<br><br>Arizona Standard, L.L.C., et al.<br><br>    Intervenors. | Case No. 4:23-cv-00280-JGZ<br><br>AMICUS MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

**I.     Introduction.**

The Town of Patagonia ("Town") as Amicus Curiae[1] files this memorandum to support the plaintiffs' Motion for Summary Judgment ("Motion"). ECF 125. The Town joins in the plaintiffs' request that the Court order the United States Forest Service (USFS) to prepare the analysis required by the National Environmental Policy Act (NEPA).

---

[1] On July 24, 2023, this Court entered its Order (ECF 36) granting the Town of Patagonia's "Motion for Leave to File Amicus Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction and to Participate as Amicus Curiae" (ECF 35).

**II.     Interest of Amicus Curiae.**

The Town is situated in a semi-arid Chihuahuan Desert Grassland and gets its water from the Sonoita Creek and tributary Harshaw Creek drainages. These drainages are officially recognized by the USFS as a Municipal Watershed. The 128,000-acre Sonoita Creek watershed is the only source of potable water for the town of Patagonia, with over 900 residents and more than 300 private-well users within a 3-mile radius of town. USFS 029423 (Sunnyside EA).

In late 2012, the Town adopted Resolution 12-16, in which it resolved "to oppose any mining project even in the exploratory stage, in the Patagonia Mountains" unless certain safety criteria were met. USFS 030582–83. The very first criterion listed was "[a] detailed water study…[that] would include a base line test of the amount of heavy metals that are in Harshaw Creek and Red Rock Canyon wash and the adjoining wash coming from Red Mountain." *Id.* at 030582.

Two years after the Resolution was adopted, the Town entered into a participating agreement with the Forest Service to "document the cooperation between the parties to monitor and measure the water quantity and quality of the Patagonia municipal supply watershed within the boundaries of the Coronado National Forest. . . ." USFS 030535 (Participating Agreement).

In August 2020, Andrea Wood, Mayor of the Town of Patagonia, wrote the Coronado National Forest Supervisor Kerwin Dewberry expressing concern about the multiple mining company proposals within the Patagonia Mountains. USFS 030553–54. In her August 2020 letter, Mayor Wood asked the Forest Service to conduct a comprehensive surface and ground water study, to be paid for by any mining companies seeking to perform any mine-related activity (including exploratory drilling) in the Harshaw Creek, Redrock Canyon, Middle Sonoita Creek, Big Casa Blanca Canyon, and Upper Sonoita Creek watersheds. *Id.*

Unfortunately, Mayor Wood did not receive a timely response to her letter, despite a letter of support from Congressman Raul Grijalva in October 2020. USFS 030551–52.

Rather, in March 2021, the U.S. Forest Service published the Draft EA for the Sunnyside Project. USFS 018726–881. The Town, along with others, submitted comments on the Draft EA. The comment letter once again raised concerns about protecting the watershed and asked for a comprehensive surface and groundwater study. USFS 019473–74. A few months later, in August 2021, Mayor Wood renewed her request for a comprehensive study in a follow-up letter to Supervisor Dewberry. USFS 030581l. On October 6, 2021, the Acting Forest Supervisor finally responded to her letters, but did not address the Town's request for a study. Instead, he simply listed various monitoring projects being conducted by the Forest Service. USFS 030547–48. In January 2023, the Forest Service published the Final EA, Finding of No Significant Impact, and Decision Notice approving the Sunnyside Exploration Drilling Project. USFS 029343–479 (Sunnyside EA); USFS 029311–34 (DN-FONSI).

The Town filed an Objection pursuant to 36 C.F.R. § 218. USFS 029752–66. In that Objection, the Town once again expressed its concern about the potential contamination of its watershed. The Town stressed the importance of a surface and groundwater study and objected to the Forest Service's failure to require it.

**III.   Argument**

    **A.   In approving the Sunnyside Project, USFS violated NEPA when it failed to candidly address the threats to the Sonoita Creek watershed.**

In their Motion, the plaintiffs set forth the background of the Sunnyside Project, the law with respect to the requirements of NEPA, and the procedural history of this matter. The Town joins in that portion of the Motion and will not repeat it here. Rather, the Town would like to emphasize that the USFS's failure to adequately consider the risk to the Municipal Watershed, addressed in the Motion at pp. 9–15, is arguably, by itself, a sufficiently

- 3 -

compelling reason for this Court to grant the plaintiffs' Motion. *See, e.g. Hualapai Indian Tribe v. Haaland,* 755 F. Supp. 3d 1165, 1197 (D. Ariz. 2024) (holding that tribe was likely to prevail on the merits of its NEPA claim where BLM failed to analyze geologic faults that could pollute the aquifers feeding sacred springs and failed to consider alternatives, such as approving fewer drilling sites located farther away from springs).

     As the Administrative Record demonstrates, the Town of Patagonia has expressed concern about the impact that mining projects like the Sunnyside Project could have on its municipal water supply at least since 2011, when it applied to the Coronado National Forest to designate a region of the forest as its municipal watershed. See USFS 029752. In December 2012, the Town council adopted a Resolution officially documenting that concern and resolving to "oppose any mining project even in the exploratory state, in the Patagonia Mountains, unless [certain] safety criteria have been met[ ]." USFS 030582. That concern for protecting the Patagonia municipal supply watershed led the Town to enter into a Participating Agreement with the USFS in 2014. USFS 030535. And, of course, this concern for the Town watershed was a principal concern raised by the Town in its Comments on the EA and the reason the Town filed an Objection to the USFS Draft DN, FONSI and Final EA for the Sunnyside Exploration Drilling Project. USFS 019472–74; 029752–66.

     In raising its concerns, the Town has never flatly opposed mining of any kind in the Patagonia mountains but rather has simply asked that any proposed projects be required to undertake studies and implement safety measures to protect the Town's water supply. Although USFS's EA and DN/FONSI claimed that the project's design features and required mitigation measures were sufficient to prevent cross-contamination between aquifers, USFS 029427–28 (Sunnyside EA), this litigation has revealed that the agency's own hydrologist disagreed with that assessment, USFS 011772. Moreover, rather than heed the warnings of its own expert or implement his recommendations, USFS chose to ignore them. USFS 029384 (Sunnyside EA) (failing to disclose hydrologist's alternative). Given the history of

ostensible cooperation between the USFS and the Town, and USFS's repeated reassurances that the Town's water supply would not be adversely impacted by the Sunnyside Project, this revelation is certainly disheartening. More significantly, USFS's failure to disclose and address the concerns raised by its own hydrologist renders the EA inadequate on its face. *See* Motion, pp. 9 – 14.

### B. The USFS's lack of baseline data on the watershed surrounding the Sunnyside Project is a violation of the NEPA's "hard look" standard.

The USFS's approval of the Sunnyside Project was also a violation of the "hard look" standard required by NEPA because the USFS did not do an adequate analysis of the baseline for the watershed surrounding the Sunnyside Project. Establishing a baseline is "not an independent legal requirement, but rather, a practical requirement in environmental analysis. . . .'" *Oregon Nat. Desert Ass'n v. Jewell*, 840 F.3d 562, 568 (9th Cir. 2016).

Further, a baseline based on stale data does not comply with NEPA's "hard look" requirement. *See, e.g. Northern Plains Resource Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1086 (9th Cir. 2011) (agency failed to take a hard look when it failed to conduct on-the-ground surveys and instead relied on aerial surveys that were between ten and 20 years old); *Lands Council v. Powell*, 395 F.3d 1019, 1031 (9th Cir. 2005) (13-year-old habitat surveys of trout species were "too outdated to carry the weight assigned" to them, and agency's reliance on non-habitat surveys that were at least six years old was "suspect"); *Ecology Center v. Castaneda*, 574 F.3d 652, 665 (9th Cir. 2009) (characterizing the data in Land Council as "fifteen years old, inaccurate, and insufficient on many variables.").

Here, for more than a decade, the Town has repeatedly asked USFS to conduct a baseline study so that the impact of proposed mining projects on the watershed could be accurately monitored. However, in approving the Sunnyside Project, USFS failed to undertake such a study. Rather than perform the updated study requested by the Town, in evaluating the impacts of the Sunnyside Project, the USFS relied upon a 2001 study of

groundwater conducted by Arizona Department of Environmental Quality. USFS 029425 (Sunnyside EA); USFS 027653–54 (Specialist's Water Report). Not only was this study more than two decades old, and thus stale, only 1 of the 20 wells in the study were within the project area. USFS 027653. Moreover, the study that USFS relied upon was an inappropriate surrogate for the baseline study requested. This litigation has revealed that, here too, the USFS's own hydrologist contradicted the EA's decision to use the ADEQ study as surrogate data. According to the hydrologist, shallow groundwater in the project area was much worse than the surrogate conditions that USFS was relying upon. USFS 011511. See Motion, p. 14–15. Thus, we now know that the data relied upon by USFS was not only "stale," it was not remotely comparable.

This failure, by USFS, to undertake a new study and establish an accurate baseline violated NEPA.

## IV. Conclusion.

For these reasons, the Town of Patagonia urges this Court to grant the Plaintiffs' Motion and to require USFS to undertake the "hard look" that NEPA requires.

Respectfully submitted this 22nd day of December, 2025

 /s/ Joy E. Herr-Cardillo
Joy E. Herr-Cardillo
c/o University of Arizona James E. Rogers College of Law
1201 E. Speedway, P.O. Box 210176
Tucson, AZ  85721
jherrcar@arizona.edu
Telephone: (520) 626 1312

*Attorney for the Town of Patagonia*